UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMPREHENSIVE CARE
CORPORATION,

    Plaintiff,

v.                                                        Case No.: 8:09-cv-01375-T-24-TBM

JERRY KATZMAN,

    Defendant.
_____/

JERRY KATZMAN,
JARED KATZMAN,
LEE KATZMAN,
MICHELLE KATZMAN,

    Counter-Plaintiffs,

v.

COMPREHENSIVE CARE
CORPORATION,

    Counter-Defendant.
_____/

**ORDER DENYING
MOTION TO DISMISS,
MOTION TO STRIKE &
<u>MOTION TO EXTEND DEADLINES</u>**

The Court now considers Comprehensive Care Corporation's motion to dismiss Counts II and III of the Amended Counter-Claim for lack of subject matter jurisdiction, its motion to dismiss Counts II, III, and IV of the Amended Counter-Claim, its motion to strike Count V and

1

other portions of the Amended Counter-Claim, and its motion to extend deadlines to conduct discovery and file dispositive motions. (Doc. 162.) Counter-Plaintiffs Jerry Katzman and his adult children, Jared Katzman, Lee Katzman, and Michelle Katzman, oppose the motion. (Doc. 169.)

## BACKGROUND

On July 20, 2009, Comprehensive Care filed a two-count Complaint in U.S. District Court against Jerry Katzman, its former executive vice president of strategic development, and Katzman's three adult children. The Complaint described Katzman's children as the holders of 10 million stock warrants in the company,[1] but named them as John Doe defendants. Comprehensive Care stated that the children's "exact identities are unknown." (Doc. 1.) But even though Comprehensive Care stated it could not identify the children by name, it asserted that it knew that they "do not reside in [] Florida, and therefore diversity is complete." Id.

Comprehensive Care alleged in the Complaint that Katzman breached his employment contract by failing to work full-time and with his best efforts, and committed fraud in the inducement by falsely representing that he would work full-time for Comprehensive Care. Comprehensive Care sought damages and return of all of Katzman's compensation, including a $70,000 signing bonus and the 10 million stock warrants, which Katzman had transferred to his

---

[1] The Complaint states that as part of Katzman's employment agreement signed May 11, 2009, Comprehensive Care granted Katzman 10,000,000 stock warrants valid for three years, and that Katzman transferred these shares to his children. (Doc. 1 at 3.) The Amended Counter-Claim characterizes the stock arrangement differently. It states that on May 11, 2009, Comprehensive Care issued Katzman a warrant to purchase as many as 100 shares of Series D Convertible Preferred Stock as part of his compensation. Comprehensive Care then re-issued the warrants to his children, such that two children had warrants to buy 33 shares and one child had a warrant to buy 34 shares of Comprehensive Care stock. (Doc. 135 at 14-15.)

adult children in May 2009, a month before he was fired.[2]

Comprehensive Care served Katzman with the Complaint, but failed to serve Katzman's children or seek more time to serve the children. But the children's identities and whereabouts were not unknown. As part of jurisdictional discovery in this case, Comprehensive Care deposed each of Katzman's children.[3] On November 2, 2009, Comprehensive Care deposed Jared Katzman in New York. In his deposition, Jared Katzman testified that he lived at an address in New York City. (Doc. 51 at 8.) Two days later, Comprehensive Care deposed Lee Katzman in Chicago. In his deposition, Lee Katzman testified that he was a medical student who studied and lived in Chicago. (Doc. 62-1 at 8.) On October 22, 2009, Comprehensive Care deposed Michelle Katzman in Lansing, Michigan. In her deposition, Michelle Katzman, a first-year law student at the Thomas M. Cooley Law School in Michigan, testified, "My home is in Florida." (Doc. 53 at 11-14.) She said she stayed in Michigan for law school, but lived in St. Petersburg, Florida with her mother. Id.

At the time of these depositions, Comprehensive Care and Jerry Katzman were aggressively litigating over the subject matter jurisdiction of this Court. Katzman argued that he lived in Florida, not New Jersey, and that the Court lacked subject matter jurisdiction under 28 U.S.C. § 1332 for lack of diversity of citizenship between the parties.[4] To prove that diversity of

---

[2] A dispute over a different set of stock warrants is pending in this Court before The Honorable James D. Whittemore. See Comprehensive Care Corporation v. Jerry Katzman & Margaret "Peggy" Husted, Case No. 8:10-cv–00942-T-27-TGW.

[3] In addition, according to an exhibit attached to the Amended Counter-Claim, Comprehensive Care's chief financial officer, Giuseppe Crisafi, issued three stock warrant agreements by name to Jared Evan Katzman, Michelle Katzman, and Lee Richard Katzman on May 13, 2009, more than two months before Comprehensive Care filed this lawsuit. (Doc. 135-2.)

[4] Comprehensive Care, whose headquarters are in Tampa, is a Florida citizen.

citizenship existed, Comprehensive Care conducted approximately 12 depositions, including depositions of most members of Katzman's family, produced scores of public records on Katzman, including his medical license records, property records and voting records, interviewed his neighbors, and hired a private investigator to dig through Katzman's trash.

Despite this effort, Comprehensive Care did not identify the John Doe defendants, as it was obligated to do.[5] Nor did it serve the John Doe defendants with process—even at their depositions—as it was obligated to do.[6] If Comprehensive Care had served the John Doe defendants, the Court may have dismissed this case in October. Michelle Katzman's possible Florida residency may have destroyed the diversity of citizenship in this case, and may have made the question of her father's residency moot. Instead, Comprehensive Care caused Katzman and this Court to spend substantial resources litigating this issue.

On November 25, 2009, the Court denied Katzman's motion to dismiss the Complaint for lack of subject matter jurisdiction, finding that the parties were diverse. (Doc. 76.) The Court's order did not address the residency of Katzman's children since no party had placed their residency into question. Also, none of Katzman's children had yet been served, even though the 120 days allowed for service of process under Rule 4(m) of the Federal Rules of Civil Procedure had expired on November 17, 2009. Without service, the Court lacked personal jurisdiction over

---

[5] Rule 10 of the Federal Rules of Civil Procedure establishes the general principle that "the identity of the parties to a lawsuit should not be concealed," S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1979) (internal citations omitted), except in exceptional circumstances, such as danger to a party, not raised in this case. See also Local Rule 1.05(b). Before filing a lawsuit against a "John Doe" defendant whose identity cannot be determined, Rule 11(b) requires an attorney to make a reasonable inquiry into the facts. A lawyer must be actually unable to uncover the party's name. Willful negligence, such as failure to conduct an inquiry or look at available information, will not suffice. See 2 Moore's Fed. Practice § 10.02[2][d] (3d ed. 2009).

[6] See Fed. R. Civ. P. 4(c)(1).

the children.[7]

On December 11, 2009, Katzman filed a Counter-Claim against Comprehensive Care. Count I of the Counter-Claim alleged that Comprehensive Care breached the employment agreement. Count II alleged breach of the stock warrant agreement between the parties, and Count III sought a declaratory judgment that Comprehensive Care improperly cancelled or attempted to cancel the stock warrants.[8] Count IV alleged that Comprehensive Care unjustly enriched itself by failing to compensate Katzman—as required by his employment contract and an earlier consulting contract—for services and by failing to reimburse him for business expenses. Count V alleged that Comprehensive Care failed to indemnify Katzman for all claims against him as required by his employment agreement. Count VI alleged that Comprehensive Care invaded Katzman's privacy by filing in the Court's docket a transcript of a hearing of the New York State Board for Professional Medical Conduct that allegedly contained private information about Katzman.

On March 19, the Court asked Comprehensive Care to respond why the John Doe defendants should not be dismissed from the Complaint for failure to complete service. (Doc. 96.) On March 25, Comprehensive Care filed a notice of voluntary dismissal, and the next day, the Court dismissed the John Doe defendants from the case without prejudice. (Doc. 103, 104.)

On April 9, 2010, the Court denied Comprehensive Care's motion to dismiss the

---

[7] Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

[8] According to the Amended Counter-Claim, Comprehensive Care's board of directors voted to issue stock warrants to Katzman. Then, presumably at Katzman's request, Comprehensive Care and Katzman divided the same stock warrants into thirds and Comprehensive Care then issued them to Jared, Lee, and Michelle Katzman. (Doc. 135 ¶¶ 47-50.)

Counter-Claim with prejudice as to Counts I, IV, and V, but dismissed Counts II, III, and VI without prejudice and granted Katzman leave to re-file those counts. The Court specifically granted Katzman leave to join his adult children to Count III of the Amended Counter-Claim. On April 19, Katzman filed the Amended Counter-Claim, joining his three children as Counter-Plaintiffs to both Count II and III. Katzman did not re-file the invasion of privacy claim in Count VI.

Rather than file an Answer, Comprehensive Care filed this multi-headed motion that seeks eight separate claims of relief.[9]

## **ANALYSIS**

**I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Ten months after stating in the Complaint "on information and belief" that the residency of Katzman's children did not destroy diversity, Comprehensive Care now seeks to dismiss Count II and III of the Amended Counter-Claim because it states "on information and belief" that their residency *does* destroy diversity. Comprehensive Care, however, does not offer any argument why lack of diversity over the Counter-Claim would deprive the Court of subject matter jurisdiction under 28 U.S.C. § 1367.

Comprehensive Care also does not support its motion with any facts. It does not tell the Court where the children live. It does tell the Court *which* of the three children lives in a state that destroys diversity. It does not tell the Court how it knows the three children's residency or what facts support its claim. It does not tell the Court whether the children have moved since July 2009 when the Complaint was filed. Comprehensive Care merely states "on information

---

[9] Comprehensive Care is directed in the future to file separate motions for each claim of relief it seeks unless the claims are so interrelated that they must be filed together. That is not the case here.

and belief" that Katzman's children "are not citizens of different states." (Doc. 162.)

Nevertheless, the Court cannot ignore this allegation—however vague—because any party may challenge the Court's subject matter jurisdiction at any time, even on appeal.[10] The Court has an independent obligation to determine whether or not it has subject matter jurisdiction over each count of the Counter-Claim. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."[11]

Because under Rule 11 Comprehensive Care must have relied upon evidentiary support or the likelihood of obtaining evidentiary support to make this allegation, the Court orders Comprehensive Care to supplement its motion and provide the Court with all information it relied upon or believes to be true in asserting that the Counter-Plaintiffs "are not citizens of different states." Comprehensive Care must supplement its motion by **June 11, 2010**. The supplemental motion may not exceed 10 pages and must only address the motion to dismiss for lack of subject matter jurisdiction. Comprehensive Care may file evidence, in the form of depositions, affidavits, or documents, as attachments to the motion.

In their response to the motion to dismiss the Amended Counter-Claim, Katzman's children assert that they reside in different states: Michelle Katzman resides in Michigan; Lee Katzman resides in Illinois; and Jared Katzman resides in New York. However, Counter-Plaintiffs did not cite to any record in support of their assertion either. Given the contradictory statements in Michelle Katzman's deposition, she should provide the Court with further information about her residency. Therefore, Counter-Plaintiffs must also supplement their

---

[10] See United States v. Corrick, 298 U.S. 435, 440 (1936).

[11] Univ. of South Ala. v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

7

response by **June 18, 2010.** The supplemental response may not exceed 10 pages and must only address the motion to dismiss for lack of subject matter jurisdiction. Counter-Plaintiffs may file evidence, in the form of depositions, affidavits, or documents, as attachments to the supplement response.

Even if the Katzman children reside in the same state, both parties should also address in the same filing why the Court would not have supplemental jurisdiction over Counts II and III of the Amended Counter-Claim under 28 U.S.C. § 1367.

## II. Motion to Dismiss for Failure to State a Claim in Count II and III

Comprehensive Care also asks the Court to dismiss Count II and III of the Amended Complaint, arguing that Counter-Plaintiffs failed to plead the new Counter-Plaintiffs' domicile, and that Counter-Plaintiffs' pleading are "somewhat unclear."

Although Rule 8 demands that a complaint contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," Rule 8 does not require a claimant to set out in detail the facts upon which he bases his claim.[12] To survive a motion to dismiss, a complaint must only allege sufficient facts, accepted as true, to state a plausible claim for relief.[13]

Rule 8 also requires a party to include "a short and plain statement of the grounds for the court's jurisdiction unless the court already has jurisdiction and the claim needs no new jurisdictional support."[14] In this case, the Court already had jurisdiction over the Complaint and Counter-Claim at the time that the Katzmans filed their Amended Counter-Claim. Based on

---

[12] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). See also Am. Dental Ass'n et al. v. Cigna Corp. et al., __ F.3d __, 2010 WL 1930128, at *3-5 (11th Cir. May 14, 2010).

[13] Id.

[14] Fed. R. Civ. P. 8(a)(1).

Comprehensive Care's pleading in the Complaint about the residency of Katzman's children, the Amended Counter-Claim needed no new jurisdictional support.  Therefore, Rule 8 did not require Katzman and his children to plead their domicile, as Comprehensive Care contends.

Comprehensive Care also has not demonstrated how the missing details in Counts II and III of the Amended Counter-Claim make the pleadings insufficient.  Although the Amended Counter-Complaint does not contain as much detail as Comprehensive Care would like, the pleadings are sufficient under Rule 8 to make out a plausible claim.

### III.     Motion to Extend the Discovery and Dispositive Motions Deadlines

#### A. *Merit of Extension Requests*

Comprehensive Care asks the Court to re-open discovery and extend the time for dispositive motions because Katzman has added "new" Counter-Plaintiffs late in the case. Although Katzman's children were added as Counter-Plaintiffs on April 19, 2010, shortly before the May 1 discovery deadline, they are not new to this case.  Comprehensive Care first named Katzman's children as John Doe defendants in the Complaint on July 20, 2009.  On December 11, 2009, Katzman filed the Counter-Claim that, again, put into issue the children's possession of the stock warrants.  On April 9, 2010, the Court permitted Katzman to add the children as Counter-Plaintiffs.

On April 9, 2010, Comprehensive Care still had ample time to depose the children and finish discovery by May 1, 2010.  But Comprehensive Care did not use this time to *complete* discovery because it had hardly begun discovery on any of the claims.  As the Magistrate Judge said in a discovery conference on March 31, 2010, Comprehensive Care's discovery practices in

9

this case have been "miserable."[15] Either as a result of poor planning or as a strategy to exhaust the financial resources of the Defendants, Comprehensive Care waited until the last moment to begin its discovery in earnest. As a result, Comprehensive Care has hit a logjam—trying to do nine months of work in two months' time.

Comprehensive Care argues that the Court precluded it from proceeding with discovery of the Katzman children until the Katzmans filed their Amended Counter-Claim on April 19, 2010. This argument lacks merit for several reasons. From the outset, Comprehensive Care should have realized the need to depose the children about the stock warrants whether or not they were named parties properly served with process. No obstacle stood in the way of discovery: Comprehensive Care did not need to uncover the children's identities. In fact, Comprehensive Care recognized the need to proceed with discovery of the children well before April 19, 2010. A month earlier, on March 17, 2010, Comprehensive Care's counsel sent an e-mail to Katzman's counsel asking to depose Jared Katzman on March 30, 2010 before the first discovery deadline expired.[16] (Doc. 110-1 at 2.) Therefore, Comprehensive Care's argument that it could not begin discovery on Katzman's children until April 19 has no basis.

Comprehensive Care also blames the Court for not ruling quickly enough on its first Motion to Dismiss. This argument fails for several reasons. First, Comprehensive Care needlessly delayed the Court's consideration of its Motion to Dismiss by filing an Amended

---

[15] Audiotape of Discovery Conference held before the Honorable Thomas B. McCoun III on March 31, 2010.

[16] The e-mail reads: "We would also like to depose Peggy's daughters in NJ after Peggy's deposition on the 29th, and depose Jared on the 30th. I think he is in NY, as well as deposing Jerry's accountant in NY also on the 30th." (Doc. 110-1 at 2.)

Motion to Dismiss without leave on the day Katzman's response was due.[17]  Comprehensive Care has also caused other delays by filing motions that "appear to have no other purpose than to generate attorneys' fees or burden opposing counsel with responding to an unnecessary motion. These type of frivolous motions prevent the Court from ruling on substantive motions."[18]  More importantly, Comprehensive Care's argument has no merit because parties must proceed with discovery while awaiting rulings and must follow the Court's Case Management and Scheduling Order and its deadlines unless the Court grants an extension.

The Court has already granted Comprehensive Care two extensions of the discovery deadline, and the Magistrate Judge generously continued to supervise outstanding discovery disputes after this Court closed discovery.  The Court also permitted the parties to amend their summary judgment motions and responses to add information learned from two depositions taken on June 3 and 4, 2010, more than a month after the May 1, 2010 discovery deadline.  (The Court also authorized the continuation of a third deposition on June 7, 2010.)  Although Comprehensive Care may not have as much discovery as it would like, it nevertheless has taken more than 14 depositions in this case, reviewed more than 1,400 pages of records, and examined under Court supervision the content of Katzman's laptop computer.  Comprehensive Care's claim that closing further discovery will cause it "incurable" prejudice and deny it the right to

---

[17] After filing the Motion to Dismiss, Comprehensive Care filed an out-of-time Amended Motion 17 days later and then attempted to push back Defendant's response deadline by 10 more days without seeking the Court's permission.  See Order of January 26, 2010, striking Comprehensive Care's Amended Motion to Dismiss.  (Doc. 87.)  The Order said: "[T]he parties have unilaterally agreed to extend Defendants' deadline to respond by ten days.  The parties cannot agree on their own to change the deadlines set by Congress and by the Court."  Id.

[18] See Order of May 6, 2010 on Motion to Strike Affirmative Defenses.  (Doc. 167.)  Comprehensive Care's other conduct has also delayed this case.  See See Order of December 11, 2009, vacating the Court's Order granting Millicent Lundburg special admission to appear in this case.  (Doc. 82.)  See Order of November 10, 2009 Denying Defendant's Motion to Compel.  (Doc. 42)  See endorsed Order requiring Comprehensive Care to file Certified Transcripts, rather than Rough Draft Transcripts, with Motion to Dismiss.  (Doc. 46.)

due process and the right to a fair and impartial trial has no merit.[19]

   B.   *Failure to Seek Extensions on Time*

Despite its claim of "incurable" prejudice, Comprehensive Care failed to move for an extension of the discovery and dispositive motion deadlines on time. Having filed its motion late, Comprehensive Care did not address, as required under Rule 6(b), whether it sought an extension late because of excusable neglect.[20] Therefore, the Court finds that Comprehensive Care failed to establish excusable neglect under Rule 6(b) for its untimely motion to extend discovery and the dispositive motion deadlines. The Court also finds, on the merits, that the deadlines for discovery and dispositive motions should not be extended.

## IV.   Motion to Dismiss for Improper Joinder of Parties

If the Court will not extend discovery, then Comprehensive Care asks the Court to either dismiss Counts II and III of the Amended Counter-Claim or require Counter-Plaintiffs to file a separate cause of action concerning the stock warrant agreements. For the same reasons that the Court will not extend discovery, the Court finds that Comprehensive Care will not suffer any prejudice by permitting Katzman to join his children as Counter-Plaintiffs.

In its April 9 order, the Court permitted Katzman to join his children to Count III of the Amended Counter-Claim. Although the Court did not expressly permit Katzman to join his children to Count II, the Court now finds that justice required that Katzman be allowed to amend

---

[19] "There is no general constitutional right to discovery in a criminal case," Weatherford v. Bursey, 429 U.S. 545, 559 (1997), where life and liberty are at stake, much less in a civil case such as this one, where money and the right to buy stock in a company are at stake. While federal law provides for discovery in civil cases, the statutory right to discovery is not unlimited in scope and open ended in time.

[20] Fed. R. Civ. P 6(b)(1)(B). In reviewing a claim for excusable neglect, the Court considers the factors set out in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993).

his Counter-Claim to join his children in Count II of the Amended Counter-Claim. Therefore, the Court denies the motion to dismiss Counts II and III for improper joinder of parties.

The Court considered allowing the Katzmans to file a separate cause of action on Counts II and III. However, the Court concludes that Katzman's children are indispensable parties to Katzman's claim under Count II for breach of contract of the stock warrant agreement and under Count III, which seeks a declaratory judgment about the parties' rights under the stock warrant agreement. The two claims over Comprehensive Care's decision to fire Katzman and to cancel the stock warrant agreement both arise from the same transactions and events, namely Katzman's termination. Katzman obtained the stock warrants as compensation for his work at Comprehensive Care. He alleges that Comprehensive Care improperly cancelled the stock warrants as a result of his improper firing. A judgment about whether Comprehensive Care violated the employment contract could likely have a binding effect on the parties' assertions of rights to the stock warrants. Therefore, the two claims should be resolved together.

## V. **Motion for Reconsideration as to Count IV (Unjust Enrichment Claim)**

Rather than file its Answer to Count IV of the Amended Counter-Claim, Comprehensive Care asks the Court to reconsider its previous ruling denying Comprehensive Care's motion to dismiss. Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[21] A party seeking reconsideration carries the burden to "demonstrate why the court should reconsider its prior decision and [must] set forth facts or law of a strongly convincing nature to induce the court to reverse its prior

---

[21] Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Argyros, No. 05-cv-1661-T-24-TGW, 2007 WL 1577840, at *1 (M.D. Fla. May 31, 2007) (citations and quotations omitted).

decision."[22] To establish a basis for rehearing, Comprehensive Care must show either: (1) "an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or manifest injustice."[23] Reconsideration is not "a vehicle for raising issues or citing authorities the party could or should have presented prior to the court's ruling. In addition, it is not a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision."[24]

Comprehensive Care has not met its burden under Rule 60 to obtain reconsideration of the Court's prior order, nor has it even attempted to do so. Instead, it has merely repeated the arguments the Court previously rejected, further delaying the Court's ability to move this case forward. Since Comprehensive Care has not offered a proper basis for reconsideration, the motion is denied.

## VI. Motion to Strike as to Count V (Indemnification Claim)

Comprehensive Care raises in a Motion to Strike an argument as to Count V of the Amended Counter-Claim that it failed to raise in its previous two motions to dismiss. Comprehensive Care argues that Katzman cannot seek indemnification under Florida Statute § 607.0850 because the statute does not apply to an action brought by a corporation against a person it must indemnify. (In Count V, Katzman also seeks indemnification under the terms of his employment contract.) The argument that Katzman failed to state a claim under Florida Statute § 607.0850 is a Motion to Dismiss disguised as a Motion to Strike. Under Rule 12(f) of

---

[22] Id.

[23] Id.

[24] Id.

14

the Federal Rules of Civil Procedure, a court may strike from a pleading an insufficient defense or any "redundant, immaterial, impertinent, or scandalous matter." Katzman's pleading is neither redundant, immaterial, impertinent, nor scandalous. Having failed to raise this argument about the inapplicability of § 607.0850 in its first Motion to Dismiss, Comprehensive Care may not now raise this defense in a motion to strike. However, under Rule 12(h)(2), Comprehensive Care may include this defense in its Answer and may raise this defense at trial if this case proceeds to trial.

## VII. Request for Sanctions

In their response to the Motion to Dismiss, the Katzmans ask the Court to impose sanctions on Comprehensive Care for its dilatory tactics. They seek an order requiring Comprehensive Care to pay their attorney's fees and costs to respond to this motion. Since Rule 7(b) and Rule 11(c)(2) require that a party make a motion to request a court order for sanctions, the Katzmans should file a motion for sanctions if they wish the Court to consider such a request.

## CONCLUSION

The Court orders that:

(1) Comprehensive Care Corporation's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DEFERRED** until the parties file supplemental material, as directed in this Order.

(2) Comprehensive Care must file a supplement to its Motion to Dismiss, which addresses its claim that the Court lacks subject matter jurisdiction over the Counter-Plaintiffs by **June 11, 2010**. The supplemental motion may not exceed 10 pages. However, Comprehensive Care may file evidence, in the form of

depositions, affidavits, or documents, as attachments to the motion.

(3) The Katzmans must supplement their response as to subject matter jurisdiction over the Counter-Plaintiffs by **June 18, 2010**. The supplemental response may not exceed 10 pages. However, the Katzmans may file evidence, in the form of depositions, affidavits, or documents, as attachments to the response.

(4) Comprehensive Care's motion to dismiss Counts II and III of the Amended Counter-Claim for failure to state a claim is **DENIED**.

(5) Comprehensive Care's motion to extend discovery is **DENIED**.

(6) Comprehensive Care's motion to extend the deadline for dispositive motions is **DENIED**.

(7) Comprehensive Care's motion to dismiss for improper joinder of parties is **DENIED**.

(8) Comprehensive Care's motion for reconsideration of the Court's Order Denying its Motion to Dismiss as to Count IV of the Counter-Claim is **DENIED**.

(9) Comprehensive Care's motion to strike the Amended Counter-Claim or strike portions of Count V of the Amended Counter-Claim is **DENIED**.

(10) The Katzman's request for sanctions is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Done in Tampa, Florida on June 7, 2010.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge