UNITED STATES DIRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMPREHENSIVE CARE
CORPORATION,

        Plaintiff,

v.                                                                 Case No.  8:09-cv-1375-T-24 TBM

JERRY KATZMAN,

        Defendant.
_____/

JERRY KATZMAN, JARED KATZMAN,
LEE KATZMAN, and MICHELLE KATZMAN,

        Counter-Plaintiffs,

v.

COMPREHENSIVE CARE
CORPORATION,

        Counter-Defendant.
_____/

**<u>ORDER</u>**

        This cause comes before the Court on Michelle, Lee and Jared Katzman's Motion for

Entry of Final Judgment as to the Stock Warrants (Doc. 314) and Dr. Jerry Katzman's Motion

for Entry of Final Judgment for Indemnification and Damages.  (Doc. 315).  Comprehensive

Care opposes the Motions.  (Doc. 324 & 325).

**I.**      **Background**

        This case is in the post-trial stage of litigation.  The pertinent facts of the case and its

procedural history are as follows: On May 11, 2009, Comprehensive Care, a healthcare company, entered into an Employment Agreement (the "Agreement") with Dr. Katzman whereby Comprehensive Care agreed to employ Dr. Katzman as its Executive Vice President of Strategic Development for a period of three years.[1]  (Doc. 135, Ex. A).  Pursuant to the Agreement, Comprehensive Care agreed to pay Dr. Katzman an annual salary of $390,000; however, Dr. Katzman's salary would increase, at a minimum, each year to reflect the increase in the cost of living.  *Id.* at 2.  As part of his compensation package, Dr. Katzman received stock warrants to purchase 100 Preference D shares of the company, which he promptly transferred to his adult children, Michelle, Lee and Jared Katzman.  The stock warrants obligated Comprehensive Care to sell the stock to the Katzman children at a specified price under specified conditions. (Doc. 184, Ex. B-2).  Comprehensive Care also paid Dr. Katzman a signing bonus of $70,000.

On July 18, 2009, Comprehensive Care's Board of Directors voted to terminate Dr. Katzman's employment, and cancel the stock warrants issued to Michelle, Lee and Jared Katzman.  On July 19, 2009, Comprehensive Care issued Dr. Katzman a termination notice stating that he was being terminated "for cause" because he had "failed to perform his job in a satisfactory manner."  On July 20, 2009, Comprehensive Care filed suit against Dr. Katzman and his three adult children who were named as John Doe defendants.  (Doc. 1).  Comprehensive Care alleged that Dr. Katzman fraudulently induced Comprehensive Care to enter into the Agreement by misrepresenting that he would work full time and that his work would reflect his

---

[1]According to Section 10 of the Agreement, the Agreement shall be governed by the laws of the State of Florida.  (Doc. 135, Ex. A at 7).

best efforts (Count I), or in the alternative, that Dr. Katzman breached the Agreement by failing to work full time or put forth his best efforts (Count II).  As to both counts of the Complaint, Comprehensive Care sought rescission of the Agreement and a return of all compensation paid to Dr. Katzman.  On July 27, 2009, Comprehensive Care's Board of Directors unilaterally cancelled the stock warrants.  (Doc. 135 ¶49).  On December 11, 2009, Dr. Katzman filed an answer and counterclaim. (Doc. 83).

On April 19, 2010, Dr. Katzman filed an Amended Answer and Dr. Katzman along with Jared, Lee and Michelle Katzman filed an amended counterclaim.  (Doc. 135).  In Count I of the counterclaim, Dr. Katzman alleged that Comprehensive Care breached the Agreement when it terminated his employment and failed to pay him pursuant to the terms of the Agreement; in Count II, Dr. Katzman and his children, Michelle, Lee and Jared alleged that Comprehensive Care breached the stock warrants when it unilaterally cancelled them; in Count III, Dr. Katzman and his children sought a declaratory judgment regarding their rights under the warrants and reinstatement of the warrants; in Count IV, Dr. Katzman alleged that Comprehensive Care was unjustly enriched because it failed to pay Dr. Katzman for services he rendered to the company from January 20, 2009 to May 10, 2009 and because it failed to reimburse Dr. Katzman for certain expenses he incurred during his employment; and in Count V, Dr. Katzman alleged that he was entitled to indemnification pursuant to Section 16 of the Agreement for attorneys' fees and costs incurred in this action.  *Id.*

On July 30, 2010, the Court entered an Order Denying Summary Judgment (Doc. 215) in which it denied the Katzmans' motion for summary judgment but found, among other things, that if Comprehensive Care's claims for fraud and breach of contract failed at trial, then no

3

genuine issue of material fact would remain as to the Katzmans' claim that Comprehensive Care breached the stock warrants when it unilaterally cancelled them.  The Court also found that the Agreement required Comprehensive Care to indemnify Dr. Katzman for the attorneys' fees and costs incurred in defending this lawsuit unless the jury found for Comprehensive Care on its fraud and/ or breach of contract claims in which case the Agreement would be rescinded. Finally, the Court found that the Agreement did not provide for advancement to Dr. Katzman of his litigation expenses.

The case proceeded to trial on September 27, 2010 on Comprehensive Care's claims of fraud in the inducement and breach of contract and Dr. Katzman's counterclaim for breach of contract.  After four days of trial, Comprehensive Care and Dr. Katzman rested their cases, and both parties moved pursuant to Rule 50(a) of the Federal Rules of Civil Procedure for a directed verdict on a variety of issues and claims.  As to Comprehensive Care's motions, the Court granted the request to strike Dr. Katzman's unjust enrichment claim for reimbursement of numerous miscellaneous expenses finding there was no evidentiary support for the claim; the Court denied the request to declare that the maximum amount of damages that Dr. Katzman would be entitled to for Comprehensive Care's breach of contract was equivalent to three years of salary and benefits rather than five years; and the Court granted the request to strike Dr. Katzman's affirmative defense of unclean hands.  As to Dr. Katzman's motions, the Court granted Dr. Katzman's Rule 50(a) motion regarding Comprehensive Care's claim that he breached the Agreement finding that the claims asserted by Comprehensive Care in Counts I and II were essentially the same.  Dr. Katzman also moved the Court to grant a directed verdict on Comprehensive Care's fraud in the inducement claim, Comprehensive Care's mitigation defense

to Dr. Katzman's breach of contract counterclaim, and Dr. Katzman's counterclaims for breach of the Agreement and breach of the stock warrants.  The Court denied these motions.

Thereafter, the case went to the Jury on Comprehensive Care's fraud in the inducement claim and Dr. Katzman's breach of contract counterclaim.  The Court instructed the Jury that if they found for Comprehensive Care on its fraud claim, they would not consider the matter of Dr. Katzman's damages for improper termination.  However if they found against Comprehensive Care and for Dr. Katzman on the fraud claim, they should award Dr. Katzman an amount of money that the preponderance of the evidence shows will fairly and adequately compensate him for Comprehensive Care's failure to perform under the Agreement.  (Doc. 299).  If the Jury found that Dr. Katzman did not commit fraud, then the Jury necessarily found for Dr. Katzman on his counterclaim that Comprehensive Care breached the Agreement by terminating him.  On October 1, 2010, the Jury returned a Verdict for Dr. Katzman on Comprehensive Care's fraud claim, finding that Dr. Katzman did not commit fraud in the inducement and thereby finding that Comprehensive Care breached the Agreement when it terminated him.  However, the Jury also found that Dr. Katzman should be awarded zero dollars in damages for Comprehensive Care's breach of the Agreement.

## II.    Discussion

Pursuant to Rules 57 and 58 of the Federal Rules of Civil Procedure, Michelle, Lee and Jared Katzman move the Court to enter final judgment in their favor finding that Comprehensive Care breached the stock warrants when it unilaterally cancelled them and to enter an order that the stock warrants be reinstated.  (Doc. 314).  Pursuant to Rule 58, Dr. Katzman moves the Court to enter final judgment in his favor as to his indemnification claim.  Pursuant to Rule 49(b), Dr.

Katzman moves the Court to amend the inconsistent damage verdict and enter a judgment for money damages consistent with the Jury's finding that he did not commit fraud and Comprehensive Care breached the Agreement or in the alternative grant a new trial solely on the issue of damages.  Finally, pursuant to Rule 50(b), Dr. Katzman moves the Court to grant his renewed motion for judgment as a matter of law on Comprehensive Care's mitigation defense to Dr. Katzman's breach of contract counterclaim.  (Doc. 315).  The Court will address each of these issues in turn.

A.     <u>The Stock Warrants</u>

Michelle, Lee and Jared Katzman move the Court to enter final judgment in their favor and against Comprehensive Care on their counterclaim for breach of the stock warrants (Counterclaim Count II) and declaratory judgment seeking reinstatement of the stock warrants (Counterclaim Count III).  The Katzmans rely on the Court's Pretrial Order in support of their Motion, in which the Court stated, "[u]nless the Employment Agreement is rescinded, CompCare breached the stock warrants by cancelling them."  (Doc. 223 at 4).  The Katzmans argue that because they prevailed on Comprehensive Care's claims, and therefore the Court did not rescind the Agreement, the Court should find that Comprehensive Care breached the stock warrants and enter a final judgment in their favor as to the stock warrants.

Additionally, the Katzmans ask the Court to reinstate the stock warrants with an extended term for exercise of the warrants.  The stock warrants were originally issued for a three year term from May 13, 2009 to May 12, 2012; however, the Katzmans argue that the stock warrants should be reinstated with an extended term because Comprehensive Care refused to recognize the warrants from July 20, 2009 through October 1, 2010 (the date of the jury verdict).  The

Katzmans urge the Court to extend the term of exercise for the warrants for a period equivalent to the time that Comprehensive Care refused to recognize the warrants.

According to both the Order Denying Summary Judgment and Pretrial Order, the Court determined that if the Agreement was not rescinded, Comprehensive Care would be held to have breached the stock warrants by cancelling them.  (Doc. 215 at 19; Doc. 223 at 4).  In the Order Denying Summary Judgment, the Court reasoned:

> In exchange for Katzman's promise to work full time, Comprehensive Care issued the warrants and obligated itself to sell stock to the Katzman children at a specified price under specified conditions.  Therefore, the warrants are not unilateral contracts that can be cancelled by one party.  The warrants are legally enforceable contracts that bind Comprehensive Care.  If Comprehensive Care's rescission claim fails, then no genuine issue of material fact remains for a jury to decide the breach allegation.  It is undisputed that Comprehensive Care breached the warrants by cancelling them without authorization after the warrants vested.

(Doc. 215 at 20).  Because Comprehensive Care failed to prevail on either of its claims, and therefore the Court did not rescind the Agreement, the Court finds as a matter of law that Comprehensive Care breached the stock warrants when it cancelled them.

The Katzmans' request for an extension of the term to exercise the stock warrants must be denied.  The Katzmans never requested such relief in the pleadings or in the Amended Joint Pretrial Statement.  (Doc. 231).  In fact, in the Amended Joint Pretrial Statement, the Katzmans sought "reinstatement of the stock warrants under the Warrant Agreement," not reinstatement of the stock warrants with an extended term not found in the Warrant Agreement.[2]  (*Id.* at 4).

Accordingly, pursuant to the Court's prior orders and Rule 58(b) of the Federal Rules of

---

[2]In the Amended Joint Pretrial Statement, the Katzmans also sought damages for the breach of the stock warrants.  (Doc. 231 at 4).  However, the Katzmans withdrew this claim for damages prior to trial.

Civil Procedure, the Court will direct the Clerk to enter judgment in favor of Michelle, Lee and Jared Katzman and against Comprehensive Care on the Katzmans' counterclaim that Comprehensive Care breached the stock warrants.  Additionally, the Court orders Comprehensive Care to reinstate the stock warrants to Michelle, Lee and Jared Katzman, effective as of the date the Clerk enters final judgment in their favor.

      B.    <u>Indemnification</u>

      Dr. Katzman moves the Court to enter a final judgement in his favor and against Comprehensive Care on his claim for indemnification under Section 16 of the Agreement, which states:

> [T]he Company will indemnify Executive from any and all claims, demands, suits, actions or judgments which hereafter may be asserted, instituted or recorded by any person, firm or corporation made against Executive with respect to all expenses, losses, charges and attorney's fees sustained or incurred by the Executive in defending any suit, action or other proceeding brought against the Executive, directly or indirectly, arising out of the Executive's employment by Company.

(Doc. 135, Ex. A at 8). Dr. Katzman relies on the Court's Order Denying Summary Judgment and Pretrial Order in support of his motion.  In the Order Denying Summary Judgment, the Court found that Section 16 of the Agreement expressed Comprehensive Care's intention to indemnify Dr. Katzman for all lawsuits, including this one.  (Doc. 215 at 21).  Additionally, in the Pretrial Order, the Court stated, "[u]nless the Employment Agreement is rescinded, Katzman is entitled to attorney's fees and expenses for this lawsuit under the indemnification provision of the Employment Agreement."  (Doc. 223 at 4).

      The language and reasoning of the Court's prior orders are straightforward.  Unless the Agreement is rescinded, Dr. Katzman is entitled to indemnification under the Agreement.

Because Comprehensive Care did not prevail on either of its claims against Katzman, the Agreement was not rescinded.  Therefore, Dr. Katzman is entitled to indemnification for his attorneys' fees and expenses incurred in this action.

Comprehensive Care argues that pursuant to Section 16 of the Agreement, it is only required to indemnify Dr. Katzman for claims it asserted against him.  Thus, Comprehensive Care argues that it is not required to indemnify Dr. Katzman or Michelle, Lee and Jared Katzman for the counterclaims that they asserted against Comprehensive Care.

The Court agrees that Comprehensive Care is not required to indemnify Michelle, Lee and Jared Katzman for their stock warrant counterclaims because they have not requested indemnification pursuant to Section 16 of the Agreement.  The Court disagrees, however, with the argument that Dr. Katzman is not entitled to indemnification for attorneys' fees and expenses associated with his counterclaims for breach of contract and indemnification.  The Court recognizes that Section 16 of the Agreement states that Comprehensive Care will indemnify "Executive from any and all claims, demands, suits, actions or judgments . . . asserted, instituted or recorded . . . *against* Executive."  (Doc. 135, Ex. A at 8 (emphasis added)).  However, Dr. Katzman's counterclaims for breach of contract and indemnification are inextricably intertwined with Comprehensive Care's claims asserted against him.  As explained by one Florida court:

> In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, *i.e.*, because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and "where the claims involve a common core of facts and are based on related legal theories, a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorneys' fees were sought [or were authorized]."

*Current Builders of Florida, Inc. v. First Sealord Sur., Inc.*, 984 So. 2d 526, 533-34 (Fla. 4th

DCA 2008) (quoting *Chodorow v. Moore*, 947 So. 2d 577, 579 (Fla. 4th DCA 2007)); *see also Anglia Jacs & Co., Inc. v. Dubin*, 830 So. 2d 169, 172 (Fla. 4th DCA 2002); *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988). "[T]he trial court [is] not required to apportion attorney's fee award among various claims and counterclaims where the issues involved in defending the claims were intertwined with other issues in the case and attorney's fees could not be reasonably apportioned." *Baker v. Falcon Powder, Inc.*, 788 So. 2d 1104, 1106 (Fla. 5th DCA 2001) (citing *Regency Homes of Dade, Inc. v. McMillen*, 689 So. 2d 1204, 1205 (Fla. 3d DCA 1997).

In this instant case, Dr. Katzman's breach of contract and indemnification counterclaims and Comprehensive Care's claims of fraud in the inducement and breach of contract involve the same common core of facts and are based on related legal theories. In fact, in order for Dr. Katzman to prevail on his breach of contract counterclaim, he simply had to successfully defend against Comprehensive Care's fraud and breach of contract claims. Because of the factual and legal relatedness of Dr. Katzman's breach of contract and indemnification counterclaims with Comprehensive Care's claims, it would be virtually impossible for Dr. Katzman's attorneys to parse out the amount of time they spent on each claim, and the Court will not require them to do so.[3]

---

[3]Comprehensive Care is not required to indemnify Dr. Katzman for his attorneys' fees and expenses incurred in pursuing his unjust enrichment counterclaim. The first part of the unjust enrichment claim involved payment allegedly due to Dr. Katzman for work he performed prior to entering into the Agreement. Because the work predates the Agreement, the indemnification provision of the Agreement does not cover that dispute. As to the second part of the unjust enrichment claim – Dr. Katzman's allegation that Comprehensive Care was unjustly enriched because it failed to reimburse him for job related expenses – the Court directed a verdict against Dr. Katzman on this claim and will not require Comprehensive Care to indemnify him for it.

The Court denies Dr. Katzman's motion for the Delaware Chancery Court to determine the amounts and reasonableness of his attorneys' fees and expenses. This Court presided over the trial of this matter and is in the best position to determine the attorneys' fees and costs. The filing of a lawsuit in the Delaware Chancery Court regarding indemnification is a waste of time, money and judicial resources. The matter is properly before this Court. In addition, the Court denies any request for attorneys' fees and costs associated with the filing of Dr. Katzman's motion to dismiss for lack of subject matter jurisdiction and the discovery related to the jurisdiction question. At a hearing on the motion, the Court found Dr. Katzman's claim and testimony that he resided in a retirement community in Sunrise, Florida in a 862 square foot, one bedroom condo with his 85 year old mother rather than in a luxurious house in New Jersey with his fiancé lacked credibility. Accordingly, Dr. Katzman should not be able to recover attorneys' fees and costs for what turned out to be a waste of the Court's time. *See Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980)[4] ("[A] court in its sound discretion may decline to award attorney's fees authorized by a contractual provision when it believes that such an award would be inequitable and unreasonable."); *see also Loman Development Co., Inc. v. Daytona Hotel and Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987).

In sum, Dr. Katzman's motion for indemnification is granted in part and denied in part. Dr. Katzman's motion is granted to the extent that Comprehensive Care must indemnify him for reasonable attorneys' fees and expenses he incurred in defending against Comprehensive Care's claims and in pursuing his own counterclaims for breach of contract and indemnification as set

---

[4]In *Bonnor v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

out above; however, Dr. Katzman is not entitled to attorneys' fees and costs associated with his

motion for lack of subject matter jurisdiction and related jurisdictional discovery.

Comprehensive Care is not required to indemnify Michelle, Lee and Jared Katzman for their

attorneys' fees and expenses.  Dr. Katzman is directed to submit his motion for attorneys' fees

and expenses to this Court pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28

U.S.C. §1920.[5]

      C.    <u>Dr. Katzman's Damages</u>

Pursuant to Rule 49(b), Dr. Katzman moves the Court to enter judgment for money

damages consistent with the Jury's finding that he did not commit fraud in the inducement and

the resulting conclusion of this Court that Comprehensive Care breached the Agreement when it

terminated his employment.  Dr. Katzman asks the Court to award him damages in the amount of

three years of compensation under the Agreement because the Jury found that Comprehensive

Care breached the Agreement.[6]  (Doc. 315 at 5-6).  Pursuant to Rule 50(b), Dr. Katzman also

---

[5] Dr. Katzman must submit his motion for attorneys' fees in the form of an itemized list of the hours spent by each attorney and/or paralegal as well as the hourly rate for each of those individuals, and the type of work for each time entry.  Furthermore, Dr. Katzman must submit an affidavit regarding the reasonableness of his attorneys' hourly rates and the total fees requested.

[6] Dr. Katzman also argues that he may be entitled to five years of compensation under paragraph 4(a) of the Agreement, but the Court disagrees.  Paragraph 4(a) of the Agreement contemplates two scenarios where Dr. Katzman could have been entitled to five years of compensation.  The first scenario, paragraph 4(a)(i), is a "Golden Parachute" provision which provided that Dr. Katzman would be entitled to five full years of compensation in the event that Dr. Katzman's employment was terminated after a single individual or identifiable group acquired more than fifty percent of the company.  The second scenario, paragraph 4(a)(ii), provides that Dr. Katzman would be entitled to five full years of compensation in the event that Dr. Katzman terminated his own employment by reason of an uncured breach by the company. In the instant case, neither of these scenarios occurred.  Therefore, the Court considers only whether Dr. Katzman is entitled to three years of compensation due to Comprehensive Care's breach of the Agreement.

renews his motion for judgment as a matter of law in his favor on Comprehensive Care's

mitigation defense.  Comprehensive Care argues that Katzman is not entitled to money damages

because the Jury actually found that Comprehensive Care properly terminated Dr. Katzman when

the Jury awarded him zero dollars in damages.  In the alternative, Comprehensive Care asserts

that it presented sufficient evidence to show that Dr. Katzman had an opportunity to mitigate his

damages and failed to do so.  (Doc. 325 at 17-18).

The Court finds that Dr. Katzman is entitled to money damages consistent with the Jury's

verdict against Comprehensive Care on its fraud claim, and that Dr. Katzman's Rule 50(b)

motion for judgment as a matter of law on Comprehensive Care's mitigation defense should be

granted.  The rationale for the Court's decision and the amount of damages that Dr. Katzman is

entitled to is as follows:

### 1.    Katzman's Rule 49(b) Motion – Damages

Dr. Katzman moves the Court pursuant to Rule 49(b) of the Federal Rules of Civil

Procedure to amend the Jury's verdict awarding him zero dollars in damages for Comprehensive

Care's failure to perform under the Agreement.  Pursuant to Rule 49(b), a trial court, upon

discovery of an inconsistency between a jury's answers to special interrogatories and the jury's

general verdict, "has the option of either (1) directing entry of judgment on the special verdicts,

notwithstanding the inconsistent general verdict; (2) returning the jury for further deliberations;

or (3) ordering a new trial."  *Wilbur v. Correctional Services Corp.*, 393 F.3d 1192, 1199 (11th

Cir. 2004).

The Eleventh Circuit has held that "[a] verdict contains an inconsistency if answers given

by the jury 'may [not] fairly be said to represent a logical and probable decision on the relevant

issues submitted.'"  *Id.* at 1200 (quoting *Aquachem Co. v. Olin Corp.*, 699 F.2d 516, 521 (11th

Cir. 1983) (citations omitted)).  "In determining whether an inconsistency exists, the court should

'refer to the entire case-pleadings, evidence, argument, jury instructions–and not just to the jury's

answers themselves.'"  *Wilbur*, 393 F.3d at 1200 (quoting *Royal Cup, Inc. v. Jenkins Coffee*

*Serv., Inc.*, 898 F.2d 1514, 1521 (11th Cir. 1990)).  In attempting to reconcile an inconsistency

pursuant to Rule 49(b), the Eleventh Circuit has instructed trial courts with the following:

> When faced with a jury verdict containing an apparent inconsistency, the court
> shall make all reasonable efforts to reconcile the inconsistency.  If there is a view
> of the case which makes the jury's answers consistent, the court must adopt that
> view and enter judgment accordingly.  However, the district court has no authority
> to strain to reconcile an inconsistency when it is not reasonable to do so, and the
> court is not empowered to fill in facts omitted from the answer to a special
> interrogatory.

*Wilbur*, 393 F.3d at 1200 (citations and quotations omitted).

In the instant case, the Jury was instructed that Comprehensive Care claimed that Dr.

Katzman committed fraud in the inducement by falsely representing that he would work full time

and that his work would reflect his best efforts, when he had no intention of doing so.  The Jury

was further instructed that Comprehensive Care sought rescission of the Agreement and the

return of all compensation it had paid to Dr. Katzman.  As to the counterclaim, the Jury was

instructed that Dr. Katzman claimed that Comprehensive Care breached the Agreement by

terminating him without proper notice and an opportunity to cure as required by the Agreement.

The Jury was further instructed that Dr. Katzman sought damages consisting of compensation for

improper termination.  In addition, the Jury was told that if it found for Comprehensive Care on

its fraud claim, it was not to consider the matter of Dr. Katzman's damages.  But, if it found

against Comprehensive Care and for Dr. Katzman on the fraud claim, it should award Dr.

14

Katzman an amount of money that would adequately compensate him for damages caused by Comprehensive Care's failure to perform under the Agreement.  The Jury was told that Dr. Katzman was entitled to recover only those damages that the parties reasonably could have anticipated, at the time they entered into the contract probably would result from Comprehensive Care's failure to perform.  (Doc. 299).  The Jury returned the following verdict:

**Do you find from a preponderance of the evidence**:

1.     That Dr. Katzman misrepresented that he would work full time and that his work would reflect his best efforts when he entered into the Employment Agreement with Comprehensive Care?
       Answer        Yes_____        No__X__
       *If you answered No to the above question, your verdict is for Dr. Katzman and against Comprehensive Care and you should skip to Question 6; if you answered Yes, go to Question 2.*

2.     That the misrepresentation(s) related to a material existing fact?
       Answer        Yes_____        No_____
       *If you answered No to the above question, your verdict is for Dr. Katzman and against Comprehensive Care and you should skip to Question 6; if you answered Yes, go to Question 3.*

3.     That Dr. Katzman knew at the time he made the misrepresentation that it was false or acted with reckless disregard for its truth or falsity?
       Answer        Yes_____        No_____
       *If you answered No to the above question, your verdict is for Dr. Katzman and against Comprehensive Care and you should skip to Question 6.  If you answered Yes, go to Question 4.*

4.     That Dr. Katzman intended to induce Comprehensive Care to rely and act upon the misrepresentation(s)?
       Answer        Yes_____        No_____
       *If you answered No to the above question, your verdict is for Dr. Katzman and against Comprehensive Care and you should skip to Question 6.  If you answered Yes, go to Question 5.*

5.     That Comprehensive Care reasonably relied upon the misrepresentation(s) and suffered injury or damage as a result?
       Answer        Yes_____        No_____
       *If you answered Yes to each and every one of the above questions (1, 2, 3, 4, 5), your verdict is for Comprehensive Care, and you should skip Question 6 and sign*

15

*and date the verdict.  If you answered No to any of the above questions (1, 2, 3, 4, 5), your verdict is for Dr. Katzman and you should go to Question 6.*

6.    Based upon the preponderance of the evidence, what amount of money damages should be awarded to Dr. Katzman to fairly and adequately compensate him for damages caused by Comprehensive Care's failure to perform under the Employment Agreement?

$_____0_____

(Doc. 300).  In the special interrogatories (questions one through five of the Verdict Form), the Jury was asked to determine whether Dr. Katzman committed fraud in the inducement when he entered into the Agreement with Comprehensive Care.  *Id.*  If the Jury answered "no" to any one of the five special interrogatories, then the Jury determined that Dr. Katzman did not commit fraud.  (Doc. 300).   If the Jury determined that Dr. Katzman did not commit fraud, as it did in this case, the Jury was then asked to determine the "general verdict," *i.e.*, the amount of damages that Dr. Katzman was entitled to for Comprehensive Care's breach of the Agreement when it terminated his employment.  *See Mason v. Ford Motor Co.*, 307 F.3d 1271, 1274 (11th Cir. 2002) (finding that a general verdict is a "verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions" (quoting Black's Law Dictionary 1555 (7th ed. 1999))).[7]  The Jury returned an inconsistent verdict, finding that Dr. Katzman did not commit fraud and therefore that Comprehensive Care failed to perform under the Agreement, but awarding Dr. Katzman zero damages for Comprehensive Care's breach of the Agreement.  (Doc. 300).

---

[7]The Eleventh Circuit has held that a question submitted to a jury as to what damages should be awarded to a party is a general verdict. *Wilbur*, 393 F.3d at 1198, 1204; *see also Nimnicht v. Dick Evans, Inc*., 477 F.2d 133, 135 (5th Cir. 1973).

A decision by the Jury on Comprehensive Care's fraud claim necessarily determined the outcome of Dr. Katzman's breach of contract counterclaim.  At the summary judgment stage of this case, the Court ruled that Comprehensive Care could defend itself against Dr. Katzman's breach of contract counterclaim only based on Section 4(d) of the Agreement.[8]  Section 4(d) states, "[t]he failure of Executive's representations herein to be materially accurate shall give the Company the right to terminate Executive's engagement."  (Doc. 135, Ex. A at 5).  In essence, Section 4(d) permits Comprehensive Care to terminate Dr. Katzman for committing fraud when he entered into the Agreement.  Comprehensive Care's fraud claim against Dr. Katzman alleged that he "fraudulently induced Plaintiff to enter into the Employment Agreement by representing he intended to work full-time for CompCare and that he would use his best efforts in his position."  (Doc. 278 ¶15).  Thus, Comprehensive Care's fraud claim hinged on whether the Jury found that Dr. Katzman had made a material misrepresentation in Section 1(b) of the Agreement.[9]   Accordingly, when the Jury found that Dr. Katzman did not commit fraud, it necessarily found that Comprehensive Care could not defend itself for its termination of Dr. Katzman; and, thus, Dr. Katzman prevailed on his breach of contract counterclaim.  Based on the above reasoning, an award of zero damages to Dr. Katzman is inconsistent with the finding that Comprehensive Care breached the Agreement by terminating him.

---

[8]The Court ruled that Comprehensive Care could not use Section 4(c) of the Agreement, which permits termination for misconduct in office, to defend its termination of Dr. Katzman because Comprehensive Care provided "scant evidence" of misconduct and did not give Dr. Katzman the required written notice prior to termination.  (Doc. 215 at 15-16).

[9]Section 1(b) states, "Executive hereby accepts the foregoing employment and agrees to render his/her services to the Company on a full-time basis in such a manner . . . as to reflect Executive's best efforts.  (Doc. 135, Ex. A at 1).

17

2.      **Dr. Katzman's Rule 50(b) Motion – Mitigation**

Although it is well established that a plaintiff employee has a duty to mitigate his

damages by seeking other employment after a wrongful discharge, "[t]he universal rule is that an

employee's damages will be mitigated only if the employer proves that similar employment

opportunity was available."  *Bollard v. El Dorado Tire Co.*, 512 F.2d 901, 905 (5th Cir. 1975);[10]

*see also Mock v. Bell Helicopter Textron, Inc.*, 2007 WL 2774230 (M.D. Fla. Sept. 24 2007);

*Hudson v. Chertoff*, 473 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007) ("Generally, the burden

regarding mitigation requires the defendant to prove that substantially equivalent work was

available and that the employee did not use reasonable diligence to obtain it."); *Juvenile Diabetes

Research Foundation v. Rievman*, 370 So. 2d 33, 36 (Fla. 3d DCA 1979) (the defendant

employer has the burden to prove by the greater weight of the evidence that the plaintiff failed to

mitigate his damages).

Although during trial the Court denied Dr. Katzman's motion for directed verdict on

Comprehensive Care's mitigation defense, the Court has the authority pursuant to Rule 50(b) of

the Federal Rules of Civil Procedure to reconsider its ruling on Dr. Katzman's renewed motion

for judgment as a matter of law.  Fed. R. Civ. P. 50(b); *see also Optimum Technologies, Inc. v.

Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007) ("Under Rule 50(b), a

party may renew its motion for judgment as a matter of law after the jury has returned its verdict,

if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving

---

[10]In *Bonnor v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all
Fifth Circuit decisions handed down prior to October 1, 1981.  661 F.2d at 1209.

party.").

The Court finds that Comprehensive Care did not present sufficient evidence to meet its burden of proving that substantially equivalent work was available to Dr. Katzman.  At trial, Comprehensive Care presented no evidence of other substantially equivalent work that was available to Dr. Katzman.  Comprehensive Care made only two attempts to establish its mitigation defense, and neither attempt was sufficient to establish such a defense.  First, counsel for Comprehensive Care asked Dr. Katzman if he had tried to find a job comparable to the job he had at Comprehensive Care.  To that query, Dr. Katzman gave specific examples of his attempts to find similar employment.  Second, counsel for Comprehensive Care made the argument that Dr. Katzman failed to mitigate his damages because he turned down the consulting position offered to him by Comprehensive Care on the condition that he would waive his rights under the Agreement.  The Court notes that this consulting position was a different type of job and paid less than Dr. Katzman's job as Vice President of Strategic Development.  Thus, neither of these attempts establish that substantially equivalent work opportunities were available to Dr. Katzman, and therefore Comprehensive Care did not offer sufficient evidence from which a reasonable jury could conclude that Dr. Katzman failed to mitigate his damages.  Accordingly, the Court grants Dr. Katzman's Rule 50(b) renewed motion for directed verdict as to Comprehensive Care's mitigation defense.

### 3.     Dr. Katzman's Damages

Because the Court has determined that the Jury's zero dollar verdict for Dr. Katzman's damages is inconsistent with the Jury's finding that Dr. Katzman did not commit fraud, and because the Court has determined that Comprehensive Care failed to establish its mitigation

defense, the Court must now turn to the amount of damages to which Dr. Katzman is entitled.  In

Florida, the measure of damages for wrongful discharge is as follows:

> [In] an action for breach of an employment contract (brought by an employee for alleged wrongful discharge prior to completion of the contract) the prima facie measure of damages is the contract price of salary or wages for the unexpired term of the contract together with any unpaid balance due under the contract for services rendered before wrongful discharge.

*Rievman*, 370 So. 2d at 35; *see also University Community Hosp., Inc. v. Wilson*, 1 So. 3d 206,

214 (Fla. 2d DCA 2008) ("The measure of damages for the breach of a contract to furnish

services is the amount of profit the non-breaching party would have earned during the remainder

of the term of the contract had there been no breach." (citations omitted)).  Accordingly, Dr.

Katzman is entitled to the following damages, which consists of compensation and benefits for

three years under the Agreement:[11]

**Base Compensation**:
Compensation for 3 years at a rate of $390,000 per annum, increased annually by CPI of 1.4%.

| | |
|---|---|
| July 20, 2009 to July 19, 2010: | $390,000.00 |
| July 20, 2010 to July 19, 2011: | $395,460.00 |
| July 20, 2011 to July 19, 2012: | $400,996.00 |
| Total Base Compensation due: | $1,186,456.00 |

**Benefits**:

| | |
|---|---|
| Life Insurance ($20,000/year) for 3 years: | $60,000.00 |

---

[11]Although Dr. Katzman worked for approximately two and a half months before he was terminated, he was not paid a salary because of the provision in his contract that stated his compensation may "be accrued . . . until such time as the Company receives financing and/or generates sufficient revenues with which to pay the Company's executives their stated compensation."  (Doc. 135, Ex. A at 2).

| | |
|---|---|
| Health Insurance ($1,250/month) for 3 years: | $45,000.00 |
| Disability, Accident and Travel Insurance ($5,000/year) for 3 years: | $15,000.00 |
| Total Benefits Due: | $120,000.00 |
| **Total Compensation and Benefits Due**: | **$1,306,456.00**[12] |

## III.   Conclusion

Accordingly, it is ORDERED AND ADJUDGED that

1.    Pursuant to Federal Rule of Civil Procedure 58(b), Michelle, Lee and Jared Katzman's Motion for Entry of Final Judgment as to the Stock Warrants (Doc. 314) IS GRANTED in part and DENIED in part.  The Motion is granted to the extent that the Clerk is directed to enter final judgment in favor of the Michelle, Lee and Jared Katzman on their counterclaim that Comprehensive Care breached the stock warrants and that Comprehensive Care is ORDERED to reinstate the stock warrants for their original term of issuance, effective from the date the Clerk enters final judgment.  The Motion is otherwise DENIED.

2.    Pursuant to Rule 58(b), Dr. Katzman's Motion for Entry of Final Judgment as to indemnification under Section 16 of the Agreement (Doc. 315) is GRANTED in part and DENIED in part. The Motion is granted to the extent that the Clerk is directed to enter final judgment in favor of Dr.

---

[12]The Court arrived at the amounts for total compensation and benefits based on the Agreement and the testimony of trial witnesses including Dr. Katzman.  (Doc. 135, Ex. A; Doc. 310).

Katzman on his counterclaim of indemnification for reasonable attorneys'

fees and costs incurred in defending Comprehensive Care's claims and

pursuing his breach of contract and indemnification counterclaims with the

exception of the fees and costs associated with the motion to dismiss for

lack of jurisdiction.  The Motion is otherwise DENIED on the issue of

indemnification.

3.      Pursuant to Rule 50(b), Dr. Katzman's Renewed Motion for Judgment as a

Matter of Law on Comprehensive Care's mitigation defense (Doc. 315) is

GRANTED.

4.      Pursuant to Rule 49(b), Dr. Katzman's Motion to Amend the Inconsistent

Damage Verdict (Doc. 315) is GRANTED to the extent that he is awarded

**$1,306,456.00**.  The Clerk is directed to enter final judgment in favor of

Dr. Katzman and against Comprehensive Care in the amount of

**$1,306,456.00** on Count I of Dr. Katzman's Counterclaim.

5.      The Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of January, 2011.


Copies to:
Counsel of Record

*Susan C. Bucklew*

SUSAN C. BUCKLEW
United States District Judge